The complaint sets forth that after negotiations beginning on April 7, 1942, the defendant's duly authorized agent ordered from the plaintiff, a dealer in structural clay products, a quantity of flue linings, specified the amount desired and the dimensions thereof and agreed to pay therefor the sum of $717.35; that on April 8, 1942, this order was duly confirmed by the plaintiff to the defendant, the former thereupon ordered the goods from the manufacturer with shipping directions and the goods were shipped to the defendant at Windsor Locks, Connecticut; that the defendant refused to accept the goods and that the plaintiff was put to loss by such nonacceptance and claims damages therefor.
In compliance with a motion by defendant that plaintiff set forth whether he claims defendant gave something in earnest to bind the contract or in part payment and, if so, what or how, and whether plaintiff claims that defendant or its agent signed any note or memorandum in writing and, if so, that such be filed in court, the plaintiff filed his statement covering the oral orders and letters written to defendant confirming such oral orders by defendant's agent and correspondence as to shipping and other details concerning the transaction. And in addition he stated that nothing was given in earnest to bind the contract and also stated that part of the negotiations were oral and part written.
Thereupon defendant filed its demurrer to the complaint as amended on the ground that it appears that (1) the alleged contract was for the sale of goods of a value in excess of $100; (2) the defendant did not accept and actually receive any portion of said goods; (3) the defendant gave nothing in earnest to bind the alleged contract and made no payments thereon; and (4) the defendant signed no note or memorandum in writing of the alleged contract. *Page 353 
It is not claimed by the plaintiff that the complaint satisfies the Statute of Frauds as to the grounds stated in the demurrer, but he claims that, because of the acts, actions, telephonic communications, letters, the original oral order, and at the same time the promise of defendant to confirm it by letter, the silence of the defendant at times when the law says it should speak, and the changing of the plaintiff's position and condition to his damage, all of which appear in the statement in response to the aforementioned motion and amended complaint, the defendant is estopped to deny the validity or enforceability of its order or to rely on the Statute of Frauds as a defense.
Also the plaintiff claims that he reasonably and continuously relied upon the promise of the defendant to confirm the oral orders; that by reason of such reliance he performed the greater part of the undertaking by forwarding two carloads of material to the place designated and his position was materially and injuriously changed by defendant's neglect or refusal to accept the said material; that defendant ought not be permitted to take advantage of an omission induced by the conduct of its own agents; that the Statute of Frauds was never intended to afford an escape from the fundamental principles of justice; and that the complaint as amended substantially satisfies the requirements of the statute and the memorandum is sufficient.
In support of the demurrer defendant says that the absence of acceptance by it of the specific goods is conclusive and the doctrine of estoppel has no application to this section of the statute but is applied only where the demurrer is predicated only on the absence of a memorandum signed by the defendant.
All of the orders were over the telephone, a method extensively employed in war time (which is a matter of common knowledge) and promptly confirmed by letter. Even the necessity of some changes in size and structure were communicated to defendant, who, in turn, phoned directions and instructions as to such matters, and plaintiff made an early delivery to Windsor Locks as directed. Also it is significant that although defendant agreed, when the first order was given, to confirm it, it never did so, thus causing a material and injurious change in plaintiff's position. Plaintiff, relying upon the order and the promise of confirmation, did in fact perform most of the agreement by shipping, or causing to be shipped, to Windsor Locks, two carloads of the material ordered.
The defendant relies on the DeNunzio case, the pertinent part of which is summarized in the syllabus: *Page 354 
"Mere words expressive of assent upon the part of the buyer to the terms of a contract of sale of personal property, cannot satisfy the requirements of the statute of frauds that he should `accept' and `actually receive' a part of the property sold. To comply with the statute in this respect there must be a delivery of the property, either actual or constructive, by the seller, and an assumption of possession and control of it by the buyer, with a mutual intent to vest its ownership in the latter." DeNunzio
v. DeNunzio, 90 Conn. 342.
The above case is not controlling, as the facts before the appellate court related to the question whether it was shown that there had been an acceptance on the part of the defendant and actual receipt of the stock. The question raised by the pleadings in this case is not one of acceptance and actual receipt, as plaintiff did not allege any such, within the meaning of the statute, but rather he alleges that defendant refused to accept the entire shipment.
It seems clear from the facts admitted by the pleadings that the defendant by its acts, failure to act, actions and conduct misled the plaintiff to his substantial damage and materially and injuriously changed his position and that fraud, either actual or constructive appears, on its part. While the doctrine of equitable estoppel has been, in this state, applied to § 5982 of the General Statutes, yet it seems that because of modern commercial methods of doing business and a desire to keep our law abreast of the times, our court has laid down a broad principle, which, while being in matter dealing with land, (§ 5982) yet evidenced the court's view on § 5983 as well, when it said:
"In this connection the meaning given to fraud or fraudulent is virtually synonymous with unconscientious or inequitable. The fraud may and generally does consist in the subsequent attempt to controvert the representation and to get rid of its effects, and thus to injure the one who has relied on it, or, as it has been stated, equitable estoppel arises when the conduct of the party estopped is fraudulent in its purpose or unjust in its results . . . the modern estoppel in pais although of equitable origin is of equal application in courts of law." Wolfe v.Wallingford Bank Trust Co. 124 Conn. 507, 517.
We note that equitable estoppel applies to actions in courts of law as well as in equity and the principle is laid down that estoppel arises when the conduct of the party estopped is fraudulent *Page 355 
in its purpose or unjust in its results. The pleadings disclose facts from which fraud or unjust results can be found.
It may be added that originally the Statute 13 of Elizabeth for the Prevention of Frauds and Perjuries was not in separate acts or sections but in one, and has come down to us as the Statute of Frauds, not the statute as to realty or the statute as to personalty. So there seems no reason why actions on the part of a defendant sufficient to invoke the doctrine of estoppel as to one part should not be equally employed as to the other. The difference claimed by the defendant is gradually disappearing.Wolfe v. Wallingford Bank Trust Co., supra, 1 Restatement, Contracts § 178; 49 Am. Jur. 891, § 584. HarmonieClub, Inc. v. Smirnow, 106 Conn. 243, 248.
To ascertain why the early courts blessed that part of the statute pertaining to real estate it may be well to ascertain the reason therefor. At the time the act was passed real estate was considered the basis of wealth and title thereto became of importance and the courts acted accordingly. Under modern conditions we have reached a stage where real estate is not the sole basis of wealth, as personal property and contracts pertaining thereto have taken on equal importance. Being tenacious to precedent, for years the courts adhered to the old idea but of late years they are concluding that so far as equitable estoppel is concerned no one part of the statute has greater sanctity than the other.
Many other modern cases hold similar doctrine.
 For the reason stated the demurrer ought to be overruled. Demurrer overruled.